IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                          Case No. 6:25-cr-60012

MICHAEL RASHAN GRACE                                                                        DEFENDANT

## ORDER

Before the Court is the Report and Recommendation filed by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.  ECF No. 35.  Judge Bryant recommends that Defendant's Motion to Suppress (ECF Nos. 12, 15)[1] be denied.  Defendant has filed an objection.  ECF No. 36.  The Court finds the matter ripe for consideration.

### I.  BACKGROUND

While patrolling Interstate 30 near Hot Spring County, Arkansas, Trooper Dustin Arnold with the Arkansas State Police observed a black Cadillac SUV with a partially obstructed license plate.  Trooper Arnold could observe the numbers and letters on the license plate; however, an obstruction prevented him from clearly identifying the state of issuance of the license plate.  This obstruction was later determined to be a car dealer license plate border cover.  The border cover included the name of the dealer and the words "Boardman, Ohio" and the word "Mahoning" under the letters and plate number.  The word "Ohio" printed on the license plate itself was partially obscured by the border cover.

Trooper Arnold testified that, while following the vehicle for about a mile and approaching the Cadillac SUV at a close distance, he could not determine the license plate's state of origin.  He then initiated a traffic stop.  After exiting his patrol vehicle and walking up to the back of the

---

[1] The Court will treat Defendant's Motion to Suppress (ECF No. 12) and Amended Motion to Suppress (ECF No. 15) as one motion, just as Judge Bryant did in his Report and Recommendation.

Cadillac SUV, Trooper Arnold was able to see that the state of issuance of the license plate was Ohio.

Trooper Arnold then walked up to the passenger side of the vehicle and asked for the driver's license and insurance information. The driver of the Cadillac SUV was Defendant Michael Rashan Grace, and he was the sole occupant of the SUV. Trooper Arnold explained that he stopped Grace because the license plate was partially obscured, which initially prevented Trooper Arnold from determining the issuing state. Trooper Arnold determined that Grace's driver's license expired about a month earlier. He then asked Grace to exit the SUV and get in the passenger seat of Trooper Arnold's patrol vehicle while Trooper Arnold ran a check on his license and insurance information.

While they were in the patrol vehicle, Grace and Trooper Arnold carried on a conversation for approximately nine minutes. During that time, Trooper Arnold asked Grace about his driving record, background, and travel plans. Trooper Arnold told Grace that "if everything checks out you will just get a verbal warning." After that statement, Trooper Arnold received a return from dispatch through his radio, the substance of which is not clear.

At the end of their conversation, Trooper Arnold asked Grace if he had any illegal substances in the vehicle. Grace responded that he did not. Trooper Arnold then asked Grace for consent to search the SUV, and Grace consented. Tropper Arnold and Grace exited the patrol vehicle, and Trooper Arnold stated again that Grace would be on the road in a few minutes. Trooper Arnold conducted a search of the SUV, where he located what he suspected were ecstasy pills and a THC vape pen in the center console. He also found a locked black suitcase in the back of the SUV. After Grace stated that he did not have a key to the suitcase, Trooper Arnold cut the lock on the suitcase and found an air tag and a Harley Davidson backpack filled with ten

individually wrapped bundles of suspected cocaine.[2]

Trooper Arnold placed Grace under arrest and advised him of his Miranda rights. Grace told Trooper Arnold that he knew the suitcase was in the vehicle but did not know the contents of it. He also stated that he was going to get paid around $4,000.00 for the trip. Grace was transported to Malvern, Arkansas, to be questioned by the Drug Enforcement Administration about the cocaine found in the SUV.

Grace was later arrested by state law enforcement officers for: (1) trafficking a Schedule II controlled substance (Cocaine); (2) possession of a Schedule I controlled substance (Ecstasy); and (3) improper display of license plate. On May 21, 2025, a federal grand jury returned an indictment charging Grace with possession of five (5) or more kilograms of cocaine, a Schedule II controlled substance, with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii)(II). ECF No. 3. Grace has entered a plea of not guilty.

In the instant Motion to Suppress (ECF Nos. 12, 15), Grace asks the Court to suppress "any and all illegally obtained evidence and any statements made by him" on February 2, 2025, the date of the traffic stop. He argues that the search and detention in this case was unreasonable. ECF No. 15. In response, the government asserts that there was sufficient justification for the traffic stop. ECF No. 24. Judge Bryant recommends that the Court deny the Motion to Suppress. ECF No. 35.

## II. STANDARD OF REVIEW

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1). Within fourteen days of receipt of a magistrate judge's report and recommendation, "a

---

[2]Later, it was determined that the bundles totaled ten kilograms of a mixture or substance containing a detectable amount of cocaine. ECF No. 24.

3

party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.2(VII)(C). After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Court may, in its discretion, conduct a *de novo* review of any issue in a report and recommendation. *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

Grace makes only one specific objection to the Report and Recommendation. He objects to Judge Bryant's finding that Trooper Arnold had probable cause to stop Grace. Grace does not object to Judge Bryant's findings regarding the duration of the traffic stop or the consent to search the vehicle.[3] Thus, the Court will conduct a *de novo* review of the portion of the Report and Recommendation addressing whether probable cause existed for the traffic stop.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend IV. "A traffic stop constitutes a seizure of the vehicle's occupants." *United States v. Mendoza*, 691 F.3d 954, 957 (8th Cir. 2012) (citing *Brendlin v. California*, 551 U.S. 249, 255-57 (2007)). "[T]he decision to stop an automobile is reasonable where the police have probable cause to

---

[3] Judge Bryant found that the duration of the traffic stop was reasonable and that Grace voluntarily consented to the search of the SUV. ECF No. 35. After review, the Court finds no clear error in the Report and Recommendation as it relates to these findings.

believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994). Arkansas law prohibits the "placing of any type of cover over a license plate which makes the license plate more difficult to read or which reduces the reflective properties of the license plate" Ark. Code Ann. § 27-14-716(c)(1).

In the instant case, Judge Bryant found that Trooper Arnold had probable cause to initiate the traffic stop because the license plate border partially obscured the identification of the plate's issuing state, which Trooper Arnold believed to be a violation of Arkansas law. Grace objects to this finding, arguing that Trooper Arnold "falsely" testified that he could not determine the issuing state of the license plate border while he was traveling behind and beside Grace. Grace further argues that Trooper Arnold had the mistaken impression that all license plate borders were illegal under Arkansas law, and thus the traffic stop lacked probable cause.

Trooper Arnold testified at the hearing that he could not determine the issuing state of the license plate of the SUV while he was driving behind and beside the vehicle because the license plate border obscured the identification of the issuing state printed at the top of the license plate. According to his testimony, Trooper Arnold was able to determine the issuing state only after he stopped Grace. Judge Bryant found this testimony credible as does this Court. A photo taken of the license plate shows that the state of issuance (Ohio) is partially blocked, making the license plate more difficult to read. This evidence supports Trooper Arnold's testimony. Grace argues that Trooper Arnold was lying when he testified that he could not ascertain the issuing state before he stopped Grace. However, Grace offers no evidence to support this conclusory argument regarding Trooper Grace's credibility.

"[T]he critical inquiry in a probable-cause determination in the traffic-stop context is what

the stopping officer observed *before* pulling over a motorist." *United States v. $45,000 in U.S. Currency*, 749 F.3d 709, 715 (8th Cir. 2014). The fact that Trooper Arnold could not ascertain the issuing state of the license plate until after he stopped Grace supports the conclusion that Trooper Arnold had probable cause to initiate the traffic stop. *See id.* at 720 (emphasizing that "what [the law enforcement officer] knew—and when—is critical in the probable cause analysis" regarding a traffic stop). Further, Trooper Arnold testified that he believed the specific license plate border on the SUV was prohibited by Ark. Code Ann. § 27-14-716(c)(1), because it made the license plate more difficult to read. The Court finds that Trooper Arnold's conclusion that the license plate border was in violation of Ark. Code Ann. § 27-14-716(c)(1) was objectively reasonable. *See United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (making clear that the determinative question is not whether a traffic violation actually occurred but whether an objectively reasonable police officer could have formed a reasonable suspicion that the driver was committing a code violation). Accordingly, the Court concludes that Trooper Arnold had probable cause to stop Grace, and thus the traffic stop was compliant with the Fourth Amendment.

### III.  CONCLUSION

Upon *de novo* review, for the reasons discussed above, the Court finds that Grace has offered neither fact nor law which would cause the Court to deviate from Judge Bryant's Report and Recommendation. Therefore, the Court overrules Grace's objection (ECF No. 36) and completely adopts the Report and Recommendation. ECF No. 35. Accordingly, the Court finds that the Motion to Suppress (ECF Nos. 12, 15) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 14th day of November, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge